(64 Misc. Rep. 395.)

### HARVEY v. BECKMAN.

(Supreme Court, Equity Term, Cattaraugus County. September 1, 1909.)

1. VENDOR AND PURCHASER (§ 77*)—CONTRACTS—CONSTRUCTION.

A stipulation, in a bond executed by a purchaser, that he may make payments of any greater sums than the annual installments and interest called for on giving three months' notice of his intent to do so, is for the benefit of the vendor, who may waive it.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 77.*]

2. VENDOR AND PURCHASER (§ 179*)—CONTRACTS—CONSTRUCTION.

A stipulation, in a contract for the sale and purchase of realty and personalty for $11,000, of which only $1,000 was paid in cash and the balance secured by a mortgage, that the purchaser shall not remove any timber from the realty unless the selling price thereof shall be paid to the vendor on the principal due, requires the purchaser to apply timber money on the principal, and he cannot apply it in payment of interest.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 179.*]

3. REFORMATION OF INSTRUMENTS (§ 25*)—GROUND—MISTAKE—EVIDENCE.

A party is not entitled to a decree reforming an instrument by inserting a provision therein, where the evidence showed that he expressly consented that the provision should be omitted.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 86; Dec. Dig. § 25.*]

4. SPECIFIC PERFORMANCE (§ 121*)—CONTRACTS ENFORCEABLE.

Evidence *held* insufficient to show that at the time of the sale of a farm and certain personalty attached thereto there was an agreement on the part of the vendee to give a chattel mortgage on the personalty to secure the deferred payments.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 121.*]

5. COSTS (§ 13*)—COSTS IN EQUITY—DISCRETION OF COURT.

The court in a suit in equity may in its discretion dispose of the question of costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 21, 25; Dec. Dig. § 13.*]

6. COSTS (§ 32*)—COSTS IN EQUITY—DISCRETION OF COURT.

A vendor, suing to restrain a purchaser from cutting and selling the timber on the premises and to reform the mortgage securing the price, and to compel the execution of a chattel mortgage by the purchaser, and obtaining an injunction restraining the removal of the timber unless the selling price thereof is applied on the purchase price, but not the other relief, is not entitled to costs on it appearing that the fact on which the relief was awarded did not exist at the commencement of the action.

[Ed. Note.—For other cases, see Costs, Dec. Dig. § 32.*]

7. COSTS (§ 13*)—COSTS IN EQUITY—DISCRETION OF COURT.

Where both parties to a suit in equity were in error as to their rights, the court in its discretion could refuse to award costs to either, though defendant succeeded on one issue and plaintiff succeeded on another.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 21, 25; Dec. Dig. § 13.*]

Action by Anna M. Harvey against Henry Beckman to reform a mortgage and to compel the execution of a chattel mortgage by defendant. Judgment for plaintiff in part, and for defendant in part.

D. E. Powell (J. E. Bixby, of counsel), for plaintiff.
Nash & Bird (George W. Cole, of counsel), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, J. On March 27, 1908, the plaintiff was the owner of a farm in the town of Otto, Cattaraugus county, N. Y., of 254 acres; about 30 acres being covered with first-growth standing timber, a considerable quantity of second-growth standing timber and a quantity of down timber being also on said premises, the plaintiff also having upon the said farm a dairy of 35 cows, 3 horses, other stock, and a quantity of farming tools, etc., all of the value of about $11,000, and the real estate being worth about $9,000. On that date plaintiff executed and delivered to the defendant a deed conveying the real estate and a memorandum agreeing to leave such live stock, farming tools, etc., on the farm for the defendant; such conveyance and sale of personal property being for the consideration of $11,000, defendant paying $1,000 of such purchase price by conveying to the plaintiff certain other real estate and securing the balance of the purchase price, viz., $10,000 by executing and delivering to plaintiff his bond conditioned for the payment of that amount to plaintiff in annual installments of $100 each, together with semiannual interest on the entire debt at 5 per cent., the whole amount to become due in 20 years, defendant having the privilege of paying any additional sums at the time of making the payment of interest upon giving plaintiff three months' notice of intention to make such additional payments, and concurrent therewith defendant executed and delivered to plaintiff a real estate mortgage covering the farm as security for payment of the bonded indebtedness. At the time of the execution and delivery of the deed, bond, mortgage, and memorandum as to personal property, it had been agreed between plaintiff and defendant that the defendant should not remove any timber from the farm, unless the selling price thereof should be paid to the plaintiff to apply on the principal of the said bond, as the plaintiff did not want the defendant to strip the farm and then abandon it, and as the defendant wanted the timber to be used to pay for the farm and property. At the time of the preparation of the real estate mortgage no provision was inserted therein, and no writing was prepared or executed embodying the terms of the agreement as to the right to remove timber and disposing of the proceeds thereof, for the reason that the scrivener who prepared the same advised the parties that such provision was unnecessary in the mortgage; that if defendant committed any waste, or did anything in the way of cutting standing timber that would impair plaintiff's security, plaintiff could obtain an injunction preventing such acts, and thereupon the parties agreed that such clause or provision as to removing timber should not be inserted in the mortgage.

In the summer of 1908 defendant cut some of the standing timber into logs, cut some of the tree tops and dead timber into heading bolts and firewood, stating that there was nothing in the writings between plaintiff and himself about the timber, and that he could cut what timber he had a mind to. The plaintiff found fault with the defendant for cutting some trees that she said he had no right to cut, when defendant stated:

"If I want to chop down some trees, I chop them down; and I be willing to pay it on the mortgage, the way we agreed to it."

Before defendant had removed any of the timber, logs, heading bolts, or firewood from the farm, the plaintiff, on August 19, 1908, brought this action for the purpose, among other things, of having her real estate mortgage reformed by inserting therein a provision embodying the oral agreement relative to the timber on said farm and restraining the defendant from removing any of such timber in violation of such agreement. During the fall of 1908 and the following winter the defendant removed from said farm logs, bolts, and firewood of the value and for which he received the sum of $344.41, all of which, under said agreement relative to the timber, was the property of the plaintiff, and should have been paid by the defendant to the plaintiff, to be applied on the principal of plaintiff's indebtedness. On September 27, 1908, defendant paid to the plaintiff $100 out of the moneys received by him from the sale of such timber, to be applied upon the principal of his indebtedness to her, and he has refused and neglected to pay any more of the timber moneys to the plaintiff, to be applied upon the principal of said indebtedness, although the same was duly demanded by the plaintiff on the 18th of February, 1909; the defendant alleging as a reason why he has not made such payment that he paid a part of the semiannual interest due his bond on the 22d day of September, 1908, out of said timber moneys, and that when he sold a part of such timber he agreed with the purchaser that about $90 of such selling price should not be paid to him until September, 1909, for the reason that he could not compel plaintiff to receive it before that date, owing to the fact that the bond provided for a three months' notice of such contemplated payment, the three months expiring at a time provided for the payment of semiannual interest.

While it is true that the provision in the bond relative to the payment of any greater sums than the annual installment of $100 or the semiannual interest at the time of making any payment of interest does require that three months' notice of such contemplated payment be given by defendant to plaintiff, yet, this provision being solely for plaintiff's benefit, she could waive the advantage of such provision, and when, on the 18th of February, 1909, she served upon the defendant a written demand for the moneys received by him for the sale of timber, heading bolts, firewood, etc., removed from the farm, to be applied upon the principal indebtedness, defendant could not rightfully refuse to comply with such demands. The agreement between the parties requiring the avails of such sale of timber, etc., to be applied upon the principal of plaintiff's indebtedness, the defendant had no right to use any of such timber moneys to pay the interest upon such indebtedness. It was the duty of the defendant to pay the interest upon his debt out of some other funds, and it is no answer to plaintiff's demand for the timber moneys to be paid to her to apply on the principal to assert that it has been paid on the interest accruing on the principal. The benefit of this timber cutting and removal agreement is vital to plaintiff's security for payment of the balance of the purchase price of the farm, stock, tools, implements, etc. If defendant's assertion is to be upheld, it is readily seen that by cutting and removing enough timber every six months to realize sufficient to pay

the semiannual interest, amounting to about $250, in the course of the lifetime of plaintiff's mortgage defendant will have cut and removed about $5,000 worth of timber, paid it all to plaintiff as interest, stripped the farm of all its timber, reduced the value of the farm to that extent, and not reduced the principal of his indebtedness. Such a result would greatly impair the plaintiff's security and be of irreparable injury to her.

It is conceded that the value of the real estate sold by the plaintiff to the defendant is about $9,000; the value of the live stock, etc., sold to the defendant at the same time, making up the consideration of the sale at $11,000, the payment of $1,000 by the conveyance of a farm by defendant to plaintiff leaving the balance due the plaintiff of $10,000, to secure the payment of which she only has a mortgage upon the real estate—no security being given by defendant to plaintiff on the personal property. It also appears that defendant is a hard-working, industrious, young man of limited means, who made the purchase of the large farm upon the understanding of the plaintiff that the defendant could nearly half pay for the farm by marketing the timber. Both parties understood and agreed that it was the money the defendant was to receive from the timber that was to be used to partially pay for the farm. It was not the agreement of the parties that such timber could be used to pay the interest accruing on the principal, but rather that it would be used in paying for the farm by being applied solely in discharge of the principal indebtedness. It was not the agreement of the parties that it was the mere value of the timber in place on the farm that defendant was to apply on the indebtedness; but it was the value of such timber when prepared for and disposed of in the market that was to be accounted for, and whatever defendant did to the timber by way of cutting, hauling, and making it marketable was included in the amount to be paid to the plaintiff to be applied upon the principal of the debt.

It may be that the making of this agreement to thus apply the gross receipts for the sale of timber, both down and standing, in whatever form it might be when it left the farm, was one of the reasons why plaintiff did not require any chattel mortgage upon the personal property. While such timber agreement was clearly made by the parties, the plaintiff has failed to satisfactorily establish that the parties agreed that such provision should be inserted in the mortgage, and the mortgage cannot be reformed by arbitrarily adding such a provision thereto. To decree that such a provision must be inserted in the mortgage would quite likely enable the plaintiff to declare the whole sum secured to be paid by the mortgage due and payable, because the defendant has failed to comply with such agreement and pay over to the plaintiff, to be applied upon the principal of his indebtedness, a portion of the timber moneys already received by him; a situation never agreed to by the parties and never even suggested by any conversation between them. The plaintiff expressly consented that such timber agreement should be omitted from the mortgage, and to hold that it was agreed that it should be inserted in the mortgage is not warranted by the evidence.

The plaintiff, however, is entitled to a judgment and decree permanently restraining the defendant, his servants, employés, or successors in interest, from removing any standing, fallen, or dead timber from the farm, unless the selling price thereof shall be paid to the plaintiff, or her successors in interest, to apply on the principal of the bonded indebtedness of the defendant, as distinguished from the interest thereon. The parties having submitted proofs as to the amount of moneys received by the defendant for timber, etc., removed from the farm since the commencement of this action, and the issues presented by the pleadings fairly presenting the question as to where such moneys must be applied, the judgment should provide that the defendant, on or before September 27, 1909, the date when the semiannual interest becomes due on the bond and mortgage, pay to the plaintiff the sum of $244.41 (the balance of timber moneys in his hands after the payment of September, 1908), to be applied upon the principal of his indebtedness, and that none of such sum of $244.41 be used by the defendant to provide moneys for the payment of semiannual interest then due.

The plaintiff also asserts a cause of action for specific performance of an alleged oral agreement of the defendant to give to her a chattel mortgage upon the personal property sold by plaintiff to defendant, accompanying said farm, as collateral security for the payment of the bonded indebtedness of $10,000, thereby claiming that she should receive from the defendant a chattel mortgage upon 35 cows, 1 bull, 3 horses, tools, etc., to secure the payment of $10,000 in 20 years, with no provision for the selling or exchanging of said animals, or that the mortgage would cover additional animals or property placed upon the farm, and with the right to the plaintiff to take possession of such chattel property at any time she should deem her security unsafe, sell the same at public or private sale, and have all the rights and privileges of and concerning such live stock and property as is usually accorded a chattel mortgagee under the laws of the state of New York.

While it is true that the plaintiff sold to the defendant live stock and personal property worth from $2,000 to $3,000 in connection with the sale of the farm, without taking any security upon such property for the payment of any part of the entire purchase price of $11,000, and while it is true that in the exercise of good business judgment she probably ought to have required that such security be given to her, yet, however meritorious such claim may be, this court is utterly powerless to relieve the plaintiff, unless it can be found from the evidence that the defendant, at the time of or prior to the sale, actually agreed to give such a chattel mortgage, or possibly some sort of a chattel mortgage. The court cannot make an agreement for the parties, and then decree a specific performance of such judicially created contract. It will not do to say that it is not to be presumed that plaintiff would have sold 35 cows, other live stock, farming tools, etc., to the defendant, to be paid for in 20 years, without intending that the purchase price would be secured to be paid by taking a lien by way of chattel mortgage or otherwise. The plaintiff's right to compel the execution of a chattel mortgage to her does not depend upon presumption at all. It depends upon the agreement of the defendant. It does not depend

upon the plaintiff's intention. It depends solely upon what the defendant agreed to do. The fact is that this personal property was sold by the plaintiff to the defendant in connection with the farm, all in one transaction, at the single stated price of $11,000. At no time during the negotiations prior to and at the final termination of the agreement was it mentioned by either plaintiff or defendant what was the consideration for the sale of the farm alone, or for the live stock, etc., separately. It is not even claimed by plaintiff that any amount whatever was named by either party as the amount of the chattel mortgage that plaintiff may have intended to exact, unless it be for $10,000 to run 20 years on what might be styled perishable property.

A very careful examination of the evidence, seeing the witnesses, listening to their testimony, and consideration of the argument of counsel, leads to the conclusion that at no time did the defendant agree to give the plaintiff a chattel mortgage on this live stock, etc. It very clearly appears that at the time of the preparation of the bond, mortgage, deed, and memorandum of sale of personal property, the plaintiff had her attention specifically called to the subject of chattel mortgages under circumstances convincing the mind that, if there had been an agreement by the defendant to give a chattel mortgage, the plaintiff would have spoken of it then and there. It is very significant that the plaintiff, in April, 1908, stated to an insurance agent, who was arranging insurance for her upon the farm buildings, that she had not required the defendant to give a chattel mortgage on the personal property transferred to him, but that she ought to have done so. This conclusion leads to a dismissal of the plaintiff's cause of action relative to the chattel mortgage.

It is clear that neither party is entitled to costs as against the other. While costs are in the discretion of the court, and ordinarily the successful party is awarded such costs in an equity action, the plaintiff is not entitled to costs, for the reason that, while she has succeeded in being awarded a permanent injunction restraining the removal of timber unless the selling price is paid to her, to be applied upon the principal and not upon the interest of the bonded indebtedness, yet the fact upon which plaintiff is entitled to that relief did not exist at the time of the commencement of this action. On August 19, 1908, the date of the commencement of this action, the defendant had not removed any timber, heading bolts, or firewood from the farm, and had not sold the same or received any money therefor; and it has not been established upon this trial that at that time he was threatening to use the timber to raise money to pay interest as distinguished from the principal of his debt. The principal controversy upon this trial on the part of the plaintiff has been relative to the chattel mortgage, and upon that issue she has obtained no relief.

Both parties to this litigation have been in error as to their alleged rights, and, in the exercise of the discretion to dispose of costs in an equity action, costs are not awarded to either party. The defendant, while he succeeds upon the issue as to the chattel mortgage, does not

succeed upon the other issue tried and submitted, and is not entitled to costs.

Let findings be prepared in accordance with the foregoing facts and conclusions.